UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CARLENE FERGUSON,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　**Case No: 5:14-cv-503-Oc-PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

# ORDER

Plaintiff appeals the administrative decision denying her husband's applications for Disability Insurance Benefits ("DIB").[1] Upon a review of the record (Doc. 13), the memoranda (Doc. 20, 21), and the applicable law, the Commissioner's decision is due to be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

    **I.**    **BACKGROUND**

On June 12, 2010, Plaintiff's husband, Ronnie Dale Ferguson ("Mr. Ferguson"), filed an application for DIB, alleging a disability onset date of March 1, 2007. (Tr. 250). The Social Security Administration ("SSA") denied his application initially and upon reconsideration. (Tr. 250). Mr. Ferguson requested a hearing before an Administrative Law Judge and on March 13, 2012, Administrative Law Judge Mary C. Montanus (the "ALJ") held a hearing. (Tr. 269–311). Two months later, the ALJ issued an unfavorable decision. (Tr. 247–60).

---

[1] Carlene Ferguson, the Plaintiff in this case, brings this cause of action on behalf of her deceased husband.

At step one, the ALJ found that Mr. Ferguson had not engaged in substantial gainful activity since March 1, 2007, which is the alleged onset date.  (Tr. 252).  At step two, the ALJ determined that Mr. Ferguson had the following severe impairments: history of degenerative disc disease of the lumbar spine with chronic pain, obesity, hypertension, bradycardia controlled with pace maker insertion, depression, and as of May 1, 2011, venous insufficiency.   (Tr. 252).

At step three, the ALJ found that Mr. Ferguson did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 252–53).  Next, the ALJ found that Mr. Ferguson retained the residual functional capacity ("RFC"), from March 1, 2007 to May 1, 2011 to perform

> a limited to range of light work as follows: the claimant could sit, stand, and walk up to 6 hours in an 8 hour day; and could lift carry up to 20 pounds occasionally, 10 pounds frequently. The claimant would not be able to climb ladders, ropes, or scaffolds, nor work around heights or dangerous moving machinery. The claimant could occasionally stoop, crouch, climb stairs, and balance. In addition, the claimant would be limited to simple, repetitive, and routine, tasks and could handle only occasional changes in a work setting.

(Tr. 254).   However, beginning on May 2, 2011, his RFC was further limited to

> sedentary work, as follows: the claimant could lift and carry up to 10 pounds occasionally, and lesser weights frequently; stand and walk for 2 hours in an 8-hour day, could sit 6 hours in an 8 hour day, but would need to have the opportunity to alternate from sitting to standing or walking every 1/2 hour for 5 minutes while on task. The claimant could stand and walk 15 minutes at time, and would need to use a cane for ambulation. The claimant would not be able to climb ladders, ropes, or scaffolds, nor work around heights or dangerous moving machinery. The claimant could occasionally stoop, crouch, climb stairs, and balance. The claimant would need to elevate his legs 15 minutes per hour on a low footstool, and would have 1-2 absences per month. He would continue to be limited to simple, repetitive, routine tasks and could handle only occasional changes in a work setting.

(Tr. 254).  At step four, the ALJ determined that Mr. Ferguson was unable to perform any past relevant work.   (Tr. 258).

At step five, however, the ALJ found that considering Mr. Ferguson's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant could perform. (Tr. 258–60). Namely, prior to May 1, 2011, Mr. Ferguson could perform the light-work occupations of housekeeper, deli cutter, and outside deliverer. (Tr. 259). And beginning May 2, 2011, Mr. Ferguson could perform the occupations of cutter and paster/press clippings, catch up screener/printed circuit board assembly, and film touch up inspector. (Tr. 259). Thus the ALJ found that Mr. Ferguson was not disabled from March 1, 2007, through the date of the decision. (Tr. 260).

On November 19, 2013, Mr. Ferguson died and his wife, the Plaintiff, was substituted as a party for his Title II claim. (Tr. 15–16). On August 1, 2014, the Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner. (Tr. 1–7). With her administrative remedies exhausted, Plaintiff timely filed the instant appeal on behalf of Mr. Ferguson, her deceased husband. (Doc. 1)

## II.  STANDARD OF REVIEW

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III. DISCUSSION

Plaintiff raises two arguments on appeal: (1) whether the ALJ improperly evaluated the medical evidence by failing to explain the weight assigned to the opinion of the examining state agency physician Samer Choksi, M.D., and (2) whether the ALJ improperly evaluated the medical evidence by failing to articulate good cause for not crediting the opinion of the treating physician Nagender A. Reddy, M.D.

The ALJ must state with particularity the weight given to different medical opinions, including non-examining state agency physicians, and the reasons therefor. *Winschel v Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The opinions of treating physicians are

entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1159 (11th Cir. 2004). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips* v. *Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240–41.

A treating physician's opinion on the nature and severity of a plaintiff's impairments is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The ALJ, however, may discount a treating physician's opinion or report regarding an inability to work if "it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 584. "The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Moreover, a treating physician's opinion is generally entitled to more

weight than a consulting physician's opinion. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Further, the opinion of a non-treating physician is not entitled to controlling weight, but instead "depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011). Indeed, "the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion." *Id.*

At issue here are the examination notes of state-agency physician Samer Choksi (Tr. 828–32) and a Heart Physical Capacity Evaluation form (Tr. 1023, 1048) completed by treating physician Nagender A. Reddy.

### A. Dr. Choksi—State Agency Physician

Plaintiff argues that the ALJ committed reversible error by failing to explicitly state what weight she accorded to Dr. Choksi's opinion. On September 23, 2010, Dr. Choksi examined Mr. Ferguson, at the request of the Office of Disability Determinations, and made several findings related to Mr. Ferguson's spine. (Tr. 828–32). Dr. Choksi found that Mr. Ferguson had a limited lumbar range of motion, positive seated and supine straight leg tests, and his gait was antalgic and rigid. However, the doctor also found that his cervical range of motion was normal, he could squat to sixty degrees, he walked heel-to-toe without assistance or an assistive device, had normal grip strength, had normal fine manipulation, lacked any muscle spasms, had no motor deficits in his upper or lower extremities, and his motor, sensory, and reflex findings were all normal. The ALJ stated that Dr. Choksi's findings "indicated [a] decreased range of motion, positive straight leg raise, but normal neurological examination; including normal grip strength." (Tr. 256).

Dr. Choksi also noted that Mr. Ferguson's "subjective complaints are consistent with the objective medical findings." (Tr. 832). During the examination, Mr. Ferguson complained that he was unable to work due to radicular symptoms in his bilateral lower extremities, the inability to bend or lift, dizziness, lightheadedness, near-syncope, drug addiction, depression, and chest pain. (Tr. 828–29).

Plaintiff's argument focuses on the ALJ's failure to discuss Dr. Choksi's vague notation the Mr. Ferguson's subjective complaints were consistent with the doctor's findings, thus implying that the doctor found that his medical findings supported Mr. Ferguson's alleged inability to work. As a threshold matter, to the extent that Dr. Choksi's notation is a finding that Mr. Ferguson was unable to work, that finding is not due any deference as the ability to work is a matter reserved for the ALJ. *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 976 (11th Cir. 2014). Likewise, to the extent that this notation constitutes a credibility finding, that finding is not due any deference as "[c]redibility determinations about subjective testimony are generally reserved to the ALJ." *Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007).

Moreover, as shown below, Dr. Choksi's findings belie Mr. Ferguson's subjective complaints. For example, in contrast to Mr. Ferguson's purported inability to lift or bend, Dr. Choksi found that his motor, strength, and sensory findings where normal and that he had no upper or lower motor deficits, along with normal grip strength and the ability to squat to sixty degrees. Notably, although Dr. Choksi made numerous findings related to Mr. Ferguson's spine, Plaintiff does not point to any of those findings to show that Mr. Ferguson had disabling or additional limitations not accounted for in the RFCs. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").

Further, while the ALJ did not explicitly state the weight she accorded to Dr. Choksi's opinion, the ALJ clearly relied on Dr. Choksi's findings in the RFC assessments. First, the ALJ cited to and summarized the doctor's examination findings, which according to the ALJ indicated a positive straight leg test and a decreased range of motion, but also a *normal neurological examination and normal grip strength*. After discussing the medical evidence, including Dr. Choksi's examination findings, the ALJ concluded that the medical evidence showed no evidence of a neurological deficit. (Tr. 255–56). Additionally, Dr. Choksi's findings do not support exertional limitations greater than those imposed by the RFCs, which include lifting only up to twenty pounds occasionally and ten pounds frequently from March 1, 2007, and beginning on May 2, 2011, lifting only ten pounds occasionally and lesser weights frequently. In summary, the ALJ clearly relied on Dr. Choksi's findings, which are consistent with the RFC findings.

Where, as here, the ALJ clearly relies on a medical opinion that is consistent with the RFC findings, the failure to explicitly state the weight accorded does not constitute reversible error. *Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010) (finding no reversible error where the ALJ did not address some of an examining physician's findings, where those findings were not inconsistent with the RFC findings and the ALJ relied on the physician's opinion); *Scott v. Astrue*, No. 5:10-CV-111-FTM, 2011 WL 1058960, at *7 (M.D. Fla. Mar. 21, 2011) ("[A]ny argument concerning the ALJ's success or failure to specifically assign any weight to [the doctor's] opinion is not well taken because [the doctor] is a[n] one-time examiner and a non-treating physician and his opinion is consistent with the ALJ's decision."). Thus, the ALJ properly considered Dr. Choksi's opinion.

**B. Dr. Reddy—Treating Physician**

On August 19, 2011, Mr. Ferguson's treating cardiologist Dr. Reddy completed a Heart Physical Capacity Evaluation form, in which he was asked to classify Plaintiff's heart condition under the American Heart Association classification system.[2] Dr. Reddy circled "Class III," which indicates:

> Class III   Patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain.

(Tr. 1023, 1048). However, Dr. Reddy did not provide any textual support for this classification or otherwise explain what affect Mr. Ferguson's heart condition would have on his ability to work. Instead, the doctor stated that it was unknown whether the heart condition would affect Mr. Ferguson's ability to attend work. The ALJ found that, to the extent the classification conflicted with the RFC findings, the classification was not due significant weight as it was inconsistent with the objective medical evidence. (Tr. 257). Plaintiff argues that the ALJ failed to articulate good cause for not crediting the classification.

As a threshold matter, it is unclear to what extent—if any—the classification is inconsistent with the ALJ's RFC findings. This classification was made in August of 2011, and the RFC limited Mr. Ferguson to only sedentary work after May 2, 2011. Indeed, this RFC provided for the many exertional limitations noted above—e.g., Mr. Ferguson could only stand and walk for two hours, sit for only six hours; could only walk for fifteen minutes at a time and would need a cane for ambulation; would need to elevate his legs fifteen minutes per hours and would be absent

---

[2] Although the parties dispute whether Dr. Reddy signed the form at issue here, which was clearly signed by his nurse practitioner ARNP Lisa M. Shuster, the Court assumes that the form does constitute Dr. Reddy's opinion.

one or two days per month; and he could only lift ten pounds occasionally and lesser weights frequently.

Even if the classification is inconsistent with the RFC findings, the ALJ articulated good cause for not crediting it as it is inconsistent with the objective medical evidence. *Lewis*, 125 F.3d at 1440 (noting that an ALJ has "good cause" to not credit a treating physician's opinion "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding").

As the ALJ explained, the objective medical evidence shows that Mr. Ferguson's "cardiac impairments were stable" after his pacemaker insertion in May of 2010. (Tr. 256). Four months after the pacemaker insertion, treating physician Andre M. Brooks found that Mr. Ferguson had no peripheral edema or chest congestion and she stated that Mr. Ferguson should continue on a conservative cardiac therapy treatment plan. (Tr. 834–35). One year after the pacemaker insertion, Dr. Brooks *again* found no peripheral edema or chest congestion and Mr. Ferguson was "doing well from a clinical standpoint"—Dr. Brooks stated *again* that Mr. Ferguson "will continue on conservative cardiac therapy." (Tr. 962). In August of 2011, Dr. Reddy's own testing showed that Mr. Ferguson had "normal cardiovascular risk based on the overall risks and test results." (Tr. 1035–36). The following October, Dr. Mark Barnhust found that Mr. Ferguson's pacemaker was ok. (Tr. 1050). And, in January of 2012, Dr. Barnhust found that Mr. Ferguson's cardiovascular exam was normal. (Tr. 1095–96). Further, although the ALJ correctly found that Mr. Ferguson did indeed have a severe impairment of bradycardia, Plaintiff does not cite to any other medical evidence that the ALJ failed to consider or that supports disabling or additional limitations not accounted for in the RFCs. Thus, the ALJ articulated good cause for not crediting the Dr. Reddy's opinion. *Lewis*, 125 F.3d at 1440.

- 11 -

### IV. CONCLUSION

For the reasons stated above, it is **ORDERED** that the ALJ's decision should be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**DONE** and **ORDERED** in Ocala, Florida on March 16, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties